# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNYSLVANIA

| | | |
|---|---|---|
| NICOLE JONES | ) | |
|     Plaintiff, | ) | DOCKET NO. 3:24 cv 96 |
| | ) | |
| VS. | ) | **AMENDED COMPLAINT** |
| | ) | |
| SIEMON'S LAKEVIEW MANOR NURSING and REHABILITATION CENTER | ) ) ) | |
| | ) | |
| And | ) | |
| | ) | |
| ENVOY OF SOMERSET LLC | ) | |
|     Defendants. | ) | FILED ON BEHALF OF: |
| | ) | **NICOLE JONES** |
| | ) | **Plaintiff** |
| | ) | |
| | ) | COUNSEL OF RECORD: |
| | ) | MARC T. VALENTINE, ESQUIRE |
| | ) | PA ID NO. 313624 |
| | ) | SNYDER VALENTINE PC |
| | ) | 116  N. CENTER AVE. |
| | ) | SOMERSET, PA 15501 |
| | ) | (814) 701-2835 |

1

### IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNYSLVANIA

| | | |
|---|---|---|
| NICOLE JONES                     ) | | |
|     Plaintiff,              ) | DOCKET NO. 3:24 cv 96 | |
|                       ) | | |
| VS.                              ) | **AMENDED COMPLAINT** | |
|                       ) | | |
| SIEMON'S LAKEVIEW MANOR          ) | | |
| NURSING and REHABILITATION       ) | | |
| CENTER                           ) | | |
|                       ) | | |
| And                              ) | | |
|                       ) | | |
| ENVOY OF SOMERSET LLC            ) | | |
| Defendants.                      ) | | |

Now comes Nicole Jones, by and through her attorney Marc T Valentine, Esquire, Snyder Valentine PC, filing this Amended Complaint and avers following in support thereof:

1. The plaintiff, Nicole Jones, resides at 364 Whitetail Rd., Somerset, PA 15501.

2. The defendant , Seimons Lakeview Manor Nursing and Rehabilitation Center, doing business at 230 Siemon Dr, Somerset, PA 15501.

3. The defendant, Envoy of Somerset, LLC, doing business at 230 Siemon Dr, Somerset, PA 15501.

**JURISDICTION**

4. This Court has jurisdiction of this case under Federal Question Doctrine as this case arises out of a claim under Americans with Disabilities Act and Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

5. The case was removed from the Somerset County Court of Common Pleas by the Defendant.

6. The case was previously filed with the Pennsylvania Human Relations Commission and the EEOC and a notice of right to sue letter was sent to the plaintiff's attorney on November 18, 2022.

7. The plaintiff was given 90 days from the date of receipt of the letter to file a lawsuit against the employer in the Court of Common Pleas.

8. A writ of summons was filed on February 9, 2023.

9. The sheriff served both defendants through the business office manager at the listed address on February 10, 2023.

10. No rule to issue a complaint was filed by either defendant.

**FACTS**

11. The plaintiff was employed as a nursing assistant on August 9, 2018, by the defendants until the date of discharge on June 18, 2021.

12. During the time of employment, the plaintiff was pregnant and had requested assistance in completing tasks in the shift.

13. The plaintiff informed the defendants of the plaintiff's pregnancy on April 9, 2021.

14. The plaintiff was diagnosed with pregnancy complications of insomnia and Preeclampsia.

15. The insomnia caused an inability to achieve regular sleep resulting in abnormal fatigue.

16. Preeclampsia is a complication in pregnancy dealing with abnormally high blood pressure.

17. Preeclampsia can be harmful and or deadly to both the mother and the baby.

18. National Institute for Occupational Safety and Health (NIOSH) Revised Lifting Equation (RNLE) have established clinical guidelines for the maximum amount of weight to be lifted by a patient with the complication of preeclampsia.

19. The highest possible amount to be lifted is 51 pounds.

20. The plaintiff's doctor placed a restriction of maximum of 20 pounds lifting capacity.

21. The plaintiff informed the defendants that the employee needed lift assist, help to complete general duties due to pregnancy and was diagnosed with sleep issues with respect to pregnancy.

22. The defendants then terminated the employment of the plaintiff for failure to complete tasks and allegations that the plaintiff was sleeping on the job.

23. The defendant did afford other pregnant employees the same right to reasonable accommodation that worked the same job with the same daily activities such as lifting patients, making beds, cleaning and other activities of a nurse assistant.
24. Plaintiff began working at the Defendants business as a CNA on August 9, 2018.
25. Plaintiff was terminated on June 18, 2021 after being on unpaid suspension from June 15, 2021 to June 18, 2021.
26. Plaintiff did not sign the notice of termination.
27. Plaintiff was informed that the Plaintiff had been allegedly sleeping on the job during the night shift, but Plaintiff was initially put on suspension for allegations of abuse.
28. There were no further actions taken with respect to the allegations of abuse.
29. On April 9, 2021, Plaintiff informed the Defendants that the Plaintiff was pregnant and the restrictions due to complications.

30. Plaintiff had informed not only her supervisors but also other staff on that day of said pregnancy and the restrictions due to complications.
31. Between April 9, 2021 and May 10, 2021, Plaintiff had informed the defendants that Plaintiff had been experiencing sleep issues and subsequent complications.
32. On May 10, 2021 the defendants began to make allegations to the Plaintiff that the Plaintiff has been sleeping while working on night shift.
33. Plaintiff told the several supervisors and administrators that Plaintiff had been having sleep issues and reminded the defendants that sleep issues had been previously discussed with the Defendants and Defendants said that as long as work is getting done there would be no issue.
34. After the Plaintiff had initially reported the Plaintiffs pregnancy and sleep issues, the Plaintiff requested lift and other assistance on the Plaintiff's floor.
35. The reason for the request for assistance was that the Plaintiff was unable to accomplish all of the Plaintiff's duties during her shift and could not lift patients without assistance.
36. The reason for not being able to complete the duties was the Plaintiff had to conduct duties that required two or more employees to complete the tasks, but the defendants did not provide assistance in any way to the Plaintiff.
37. The Lifting of patients was to be done with the assistance of a lift machine and two employees.
38. The plaintiff was unable to lift patients on her own and did not receive assistance.
39. The Plaintiff worked night shift and prior to the Plaintiff shift ending, Plaintiff had a duty to awake and get residents out of bed.
40. Although the Plaintiff had informed the defendants that the Plaintiff had lift restrictions and the qualified medical condition of pregnancy, the defendants did not provide any assistance to the Plaintiff in getting residence out of bed.
41. Plaintiff had to lift and move residents on her own which is a violation of not only the healthcare laws and duties of care for the patient but also dangerous to the health of the Plaintiff for a period of three weeks until the Plaintiff was allegedly suspended for a false abuse allegation.
42. There was another similarly situated employee that worked day shift.
43. She had a very similar situation to the Plaintiff.

44. When that employee told the defendants that the employee needed assistance, the employee provided assistance to the employee.
45. The assistance was additional employees helping that employee.
46. The defendants also took measures to prevent said employee from lifting more than what should be lifted with that employee's health condition.
47. Further the defendants moved the shift of the employee to give reasonable accommodation to that employee.
48. The defendants did not provide any assistance to the Plaintiff.
49. The Plaintiff had a lifting restriction due to pregnancy but the defendants did not provide any assistance with that weight restriction but required the Plaintiff to do said lifts knowing full well that the Plaintiff was pregnant.
50. Defendants showed no concern and gave no reasonable accommodation for the medical condition of the Plaintiff.
51. Plaintiff denies sleeping on the job.
52. The Plaintiff was terminated in violation of the employee handbook as the employee was not given notice of the reason for termination prior to the termination hearing nor was the Plaintiff given a due process right to said termination.
53. Plaintiff worked approximately 40 hours a week without overtime at a rate of $16.50 per hour.
54. The employee is still owed 5.3 hours of sick days and 56.49 hours of PTO time.
55. All of this time was earned by the Plaintiff but did not receive.
56. During the Plaintiff's health issues of pregnancy, the Plaintiff attempted to go on vacation and even attempted FMLA.
57. The defendants did not provide the opportunity for FMLA nor would the defendants allow the Plaintiff to go on vacation although the Plaintiff had the time to do so.
58. The Plaintiff had worked weekend shifts but was not receiving the $1.00 per hour shift differential like other employees were receiving. This can be evidenced by the paycheck stubs of the Plaintiff.
59. The Plaintiff applied for unemployment and the defendants denied unemployment.
60. Plaintiffs physician had given a note to the Plaintiff that the Plaintiff could not lift due to pregnancy and said note was given to the supervisors of the defendants.

61. Plaintiff had informed the several layers of management on different occasions that the Plaintiff was not receiving assistance as required did not receive any reasonable accommodation.
62. A new handbook had been created by the defendants.
63. Plaintiff never received said handbook nor did the Plaintiff never sign off on said handbook.
64. There is a collective-bargaining agreement with the Defendants but the defendants nor the union ever provided Plaintiff with a copy of the collective bargaining agreement.
65. Vacation time is dictated by the collective bargaining agreement.
66. The defendants did not provide reasonable accommodation to the plaintiff and wrongfully terminated the plaintiff.
67. The defendants had a duty to provide reasonable accommodation under the ADA.
68. The defendants breached that duty by not providing reasonable accommodation.
69. The plaintiff suffered loss of employment, lower hourly pay for follow-up in ointment, increased cost of travel, loss of healthcare, pain, aggravation, anxiety, statutory damages, stress loss of benefits attorney's fees and other costs.

## COUNT I: AMERICANS WITH DISABILITIES ACT

70. The plaintiff incorporates by reference paragraph one through paragraph 69 as though fully set forth in detail.
71. The defendant failed to provide reasonable accommodation for the plaintiff. Fuoco v. Lehigh Univ., 981 F.Supp. 2d 352, 361 (E.D. Pa. 2013).
72. A claim under the Americans With Disabilities Act requires (42 USC 12102 (1):
73. **(1)DISABILITY**The term "disability" means, with respect to an individual—
74.
    **(A)** a physical or mental impairment that substantially limits one or more major life activities of such individual;

    **(B)** a record of such an impairment; or

    **(C)** being regarded as having such an impairment (as described in paragraph (3)).

    **(2)MAJOR LIFE ACTIVITIES**

**(A) In general**

For purposes of paragraph (1), major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

**(B) Major bodily functions**

For purposes of paragraph (1), a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions.

75. The plaintiff was pregnant.
76. The plaintiff was diagnosed with complications to pregnancy.
77. The complications were insomnia and preeclampsia.
78. Insomnia is a sleep disorder that greatly impacts plaintiff's ability to perform many of the physical and mental tasks required for the plaintiff's position.
79. Preeclampsia is a complication to pregnancy involving high blood pressure which impairs the plaintiff's respiratory, circulatory, endocrine, and neurological functions.
80. The pregnancy and complications limited the plaintiff's ability to manually lift patients.
81. The pregnancy and complications limited plaintiff's ability to care for the patients, clean rooms, and other daily tasks because of insomnia.
82. The plaintiffs OB/GYN diagnosed the plaintiff with pregnancy and the complications of insomnia and preeclampsia.
83. The plaintiff's OB/GYN placed restriction on the plaintiff restricting the ability to lift a maximum weight of 20 pounds.
84. The plaintiff gave notice of the pregnancy and complications to the defendant on April 9, 2021 through May 10, 2021.
85. 42 USC 12112 Discrimination:

    (a) General rule

No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

(b)Construction

As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes—

(1)limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;

(2)participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);

(3)utilizing standards, criteria, or methods of administration—

(A)that have the effect of discrimination on the basis of disability; or

(B)that perpetuate the discrimination of others who are subject to common administrative control;

(4)excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association;

(5)

> (A) not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity; or
>
> (B) denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant;

86. The defendant did not provide reasonable accommodation.
87. The defendant did not provide lift assistance nor assistance in helping the plaintiff complete the daily work tasks.
88. The defendant did allow the plaintiff, initially, to take short naps with the requirement that the plaintiff completed the work tasks during the plaintiff shift.
89. The defendant began making false allegations against the plaintiff on May 10, 2021.
90. The defendant informed the plaintiff that the defendant was placing the plaintiff on suspension for abuse allegations.
91. The defendant, after a few days, terminated the plaintiff claiming that the defendant had been sleeping on the job.
92. The defendant had a duty to provide reasonable accommodation under the ADA.
93. The defendant violated that duty by not providing reasonable accommodation.
94. The plaintiff suffered discrimination due to the disability and the plaintiff not receiving reasonable accommodation resulting in the loss of employment, loss of sick time, vacation time and other benefits owed to the plaintiff.
95. The plaintiff also suffered increased transportation costs as the subsequent job in which the plaintiff acquired had a greater distance to travel resulting in higher expenses for travel.
96. The plaintiff also suffered disparate treatment in that the defendant provided reasonable accommodations to other employees who had been pregnant.
97. Those accommodations included lift assist in lift completing daily tasks.

98. To the best of the plaintiff's knowledge, the employees that received reasonable accommodation did not have complications in their pregnancy.
99. The defendant had a duty to treat employees equally and breach that duty by treating the plaintiff differently than similarly situated other employees.
100. The plaintiff's damages are the direct result of the defendants refusal to provide reasonable accommodation and the disparate impact of the disparate treatment by the defendant.
101. The plaintiff suffered loss of employment, lower hourly pay for follow-up in ointment, increase cost of travel, loss of healthcare, pain, aggravation, anxiety, statutory damages, stress, loss of benefits, attorney's fees and other costs.

WHEREFORE, the plaintiff humbly requests that this Honorable Court find that the plaintiff did not receive a reasonable accommodation and was disparately treated an award the aforementioned damages to the plaintiff.

## COUNT II: TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED BY THE PREGNANCY DISCRIMINATION ACT

102. The plaintiff incorporates by reference paragraph one through paragraph 101 as though fully set forth in detail.
103. Pregnancy Discrimination Act of 1978 Amended the 1964 Civil Rights Act known as Title VII.
104. The amendment is as follows:

section 701 of the Civil Rights Act of 1964 is amended by adding at the end thereof the following new subsection:

"(k) The terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by

pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work, and nothing in section 703(h) of this title shall be interpreted to permit otherwise. This subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion: Provided, That nothing herein shall preclude an employer from providing abortion benefits or otherwise affect bargaining agreements in regard to abortion.".

105. Title VII prohibits employers from discriminating against employees on the basis of pregnancy, related medical conditions and women affected by pregnancy or related medical conditions.
106. The plaintiff was diagnosed with pregnancy and complications of insomnia and preeclampsia.
107. Prior to the plaintiff being diagnosed with pregnancy and the aforementioned complications, the plaintiff did receive some assistance on the required two employee per patient lift requirement.
108. After the defendant received notice of the plaintiff's pregnancy and aforementioned complications, the plaintiff received complaints about the plaintiff's ability to complete tasks and allegations about poor treatment of patients.
109. The defendant no longer provided assistance to the plaintiff after notice of pregnancy and the aforementioned complications.
110. Disparate treatment is prohibited under Title.
111. The defendant did allow the plaintiff, initially, to take short naps with the requirement that the plaintiff completed the work tasks during the plaintiff shift.
112. The defendant began making false allegations against the plaintiff on May 10, 2021.
113. The defendant informed the plaintiff that the defendant was placing the plaintiff on suspension for alleged abuse.

114. The defendant, after a few days, terminated the plaintiff claiming that the defendant had been sleeping on the job.
115. The defendant had a duty to provide to not discriminate against the plaintiff for pregnancy and the pregnancy complications.
116. The defendant violated that duty by treating the plaintiff differently than other similarly situated employees because of the plaintiff's pregnancy and pregnancy complications.
117. The plaintiff suffered discrimination resulting in the loss of employment, loss of sick time, vacation time and other benefits owed to the plaintiff.
118. The plaintiff also suffered increased transportation costs as the subsequent job in which the plaintiff acquired had a greater distance to travel resulting in higher expenses for travel.
119. The plaintiff also suffered disparate treatment in that the defendant provided reasonable accommodations to other employees who had been pregnant.
120. Those accommodations included lift assist and in completing daily tasks.
121. To the best of the plaintiff's knowledge, the employees that received reasonable accommodations did not have complications in their pregnancy.
122. The defendant had a duty to treat employees equally and breached that duty by treating the plaintiff differently than similarly situated other employees.
123. The plaintiff's damages are the direct result of the defendant's decision to discriminate against the plaintiff and the disparate impact of the disparate treatment by the defendant.
124. The plaintiff suffered loss of employment, lower hourly pay for follow-up in ointment, increase cost of travel, loss of healthcare, pain, aggravation, anxiety, statutory damages, stress, loss of benefits, attorney's fees and other costs.

WHEREFORE, the plaintiff humbly requests that this Honorable Court find that the plaintiff was discriminated against due to pregnancy and complications  and was disparately treated an award the aforementioned damages to the plaintiff.

                                                                Respectfully submitted,

                                                                __/s/ Marc T. Valentine__

                                                                Marc T. Valentine, Esquire

Case 3:24-cv-00096-KRG     Document 6     Filed 05/24/24     Page 14 of 15

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNYSLVANIA**

| | |
|---|---|
| NICOLE JONES )<br>       Plaintiff,       )<br>                                )<br>VS.                              )<br>                                )<br>SIEMON'S LAKEVIEW MANOR )<br>NURSING and REHABILITATION )<br>CENTER                         )<br>                                )<br>And                            )<br>                                )<br>ENVOY OF SOMERSET LLC )<br>Defendants.              ) | DOCKET NO. 3:24 cv 96<br><br>**COMPLAINT** |

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Complaint was served upon the following party via electronic service through the filing system on this date.

Kara Lattanzio, Esquire
HARDIN THOMPSON, PC
The Frick Building
437 Grant St., Suite 620
Pittsburgh, PA 15219
Attorney for Defendants

Date: __5-24-2024__            Respectfully Submitted,

                              __/s/ Marc T. Valentine__
                              Marc T. Valentine, Esquire